**The PEOPLE of the State of Colorado, Petitioner,**

v.

**DISTRICT COURT, GILPIN COUNTY, Colorado, and the Honorable Kenneth E. Barnhill, one of the judges thereof, Respondents.**

**No. 91SA398.**

Supreme Court of Colorado,
En Banc.

Feb. 10, 1992.

Rehearing Denied March 10, 1992.

Donald E. Mielke, Dist. Atty., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for petitioner.

David F. Vela, Colorado State Public Defender, Terri L. Brake, Chief Deputy Public Defender, Larry A. Garner, Deputy State Public Defender, Golden, for defendant Joseph Nick Aguayo.

Schoenwald & Lewis, P.C., Forrest W. Lewis, Denver, for defendant Marvin Dennis, Jr.

Chief Justice ROVIRA delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, the Jefferson County District Attorney seeks reversal of an order of the Gilpin County District Court precluding the district attorney from pursuing the death penalty.[1] The People allege that the court exceeded its jurisdiction and grossly abused its discretion and request that we prohibit enforcement of the order. We issued a rule to show cause and now make the rule absolute.

## I

In the underlying action in this case, the defendants, Joseph Aguayo and Marvin Dennis, Jr., were charged with two counts of first-degree murder, one count of aggravated robbery, and one count of conspiracy. The charges arose from the July 30, 1991 murder of Rex Miller. On August 23, 1991, the defendants pleaded not guilty and the case was set for trial on November 18, 1991. The court entered a written scheduling order setting a deadline for completion of discovery and filing of motions by September 23, 1991. A hearing on the motions was held on October 4, 1991.[2]

On October 8, 1991, the People filed a "Notice of Intent to Qualify the Trial Jury to Impose a Sentence of Death Pursuant to C.R.S. 16–11–103 (1991 as amended), House Bill 91S2–1001." Aguayo, later joined by Dennis, filed an objection to the notice claiming that it was untimely. On October 11, 1991, the district court held a hearing to determine whether the People could seek the death penalty.

During the hearing the trial judge expressed concern because the notice of intent was not given until after the scheduling order was entered, after the motions deadline, after the motions hearing was

---

1. Petitioner also filed a notice of appeal, No. 91SA397, pursuant to section 16–12–102, 8A C.R.S. (1986 & 1991 Supp.), as amended by H.B. 91S2–1008 (1991). An order was entered staying all proceedings in the appeal pending resolution of the original proceeding. For purposes of case management, we consolidate the original proceeding and the appeal, and resolve their common issue by this opinion.

2. The motions hearing included, *inter alia,* an evidentiary hearing, resolution of motions to suppress statements, resolution of outstanding discovery issues, resolution of the severance issue, and discussion regarding the juror questionnaire and the number of jurors.

held, and with no prior indication by the People of intent to seek the death penalty. The People responded by noting that there were no statutory requirements for notice of intent to seek the death penalty, nor were there any motions requirements. Furthermore, there was uncertainty as to the application of the death penalty following this court's decision in *People v. Young*, 814 P.2d 834 (Colo.1991).[3] The defendants asserted that the district court, the district attorney, and the defense had all agreed to a scheduling order, which the defense had fully complied with, and which the district attorney should also be compelled to follow. Additionally, the defense relied on the implication by the People that this was not going to be a death penalty case. Throughout the hearing there was reference to House Bill 91S2–1001. This bill, signed by the governor on September 20, 1991, reenacted the pre–1988 version of the death penalty. The People relied on this bill, in part, in deciding to pursue the death penalty. Both defendants argued that this statute was not retroactive and not applicable to their case, the offenses having been committed before the reenactment.

The district court denied the request to qualify the jury for the death penalty, finding a lack of adequate notice to the defendants and that the People had proceeded as if the case was not a death penalty case. The court made no decision regarding the merits of House Bill 91S2–1001.

On October 11, 1991, the same day as the hearing, the governor signed House Bill 91S2–1038 which expressed the intent of the "General Assembly that there be no hiatus in the imposition of the death penalty ... as a result of the holding of the Colorado Supreme Court in *People v. Young*, 814 P.2d 834 (Colo.1991)." The new law makes imposition of the death penalty applicable to crimes committed after July 1, 1988 and prior to September 20, 1991.

On October 17, 1991, the People moved the court to reconsider its ruling. The

People noted that House Bill 91S2–1038 had been signed into law on October 11, 1991, and argued that it demonstrated that the General Assembly clearly intended to have operative death penalty procedures at the time the offenses in this case were committed. The trial court denied this motion.

The issue before us is whether the district court abused its discretion in denying the People the opportunity to seek the death penalty under the circumstances here.

## II

■■ Any person sentenced for a class 1 felony on or after July 1, 1985 shall be punished by a minimum of life imprisonment and a maximum of death. § 18–1–105(1)(a)(IV), 8B C.R.S. (1986 & 1991 Supp.). First-degree murder is a class 1 felony. § 18–3–102, 8B C.R.S. (1986). Therefore, by statute, a person charged with first-degree murder is subject to the possibility of the death penalty. The prosecution determines whether to seek the death penalty and the jury determines who is to receive a sentence of death. *People v. Davis*, 794 P.2d 159, 172 (Colo.), *cert. denied*, —— U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). "After a defendant has been found guilty of a capital offense, and the parties have argued their positions, the jury must determine whether death or life imprisonment is the appropriate sentence." *People v. O'Neill*, 803 P.2d 164, 176 (Colo.1990).

■■ There is no Colorado statute requiring the prosecutor to give notice of intent to seek the death penalty. Although the district attorney is not required by statute to give notice of intent to seek the death penalty, we must determine whether the district court acted appropriately in light of *Lankford v. Idaho*, —— U.S. ——, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991). In *Lankford*, the Court held that due process was violated in an Idaho murder case because neither the defendant nor his counsel was

---

**3.** In *People v. Young*, we found the death penalty statute, as amended in 1988, violated the

cruel and unusual punishment and due process clauses of the state constitution. *Id.* at 845.

given adequate notice that the judge might sentence the defendant to death. The prosecution did not recommend the death penalty and the sentencing proceeding provided no notice or indication that the trial judge contemplated death as a possible sentence. The judge, however, sentenced the defendant to death. The Court found that the state's decision not to recommend the death penalty and the trial judge's silence following the state's decision resulted in a lack of notice to the defendant denying him "the benefit of the adversary process." *Id.* 111 S.Ct. at 1732–33.

In *Lankford,* the state argued that the state statute, plus advice received at petitioner's arraignment regarding the possibility of the death penalty, provided adequate notice. The Court agreed that this would be adequate notice if there were no presentencing order after which the prosecutor declined to recommend the death penalty, or if the petitioner had received similar advice after the state declined to recommend the death penalty. *Id.* 111 S.Ct. at 1729.

■ The defendants in this case received notice of the People's intent to seek the death penalty forty-one days prior to trial. The district attorney never stated that the death penalty would not be sought, and there is a Colorado statute expressing the possibility of the death penalty. Thus, while we agree with the district court that the defendants are entitled to appropriate notice, we find that they were provided such notice, and were not deprived of due process.

■ The defendants argue that the trial court did not abuse its discretion by requiring the prosecution to abide by the trial schedule. It is apparent from a reading of the record that an important consideration prompting the trial court to deny the People's request to death qualify the jury was the court's desire to maintain the scheduling order. The trial court also expressed concerns regarding the increased number of jurors required for a death penalty case, the increased time necessary to choose the jurors, and that the trial could not possibly

occur on November 18, 1991, as scheduled. But, delay alone, without prejudice or intent to harass, is not a sufficient reason for precluding the People from pursuing the death penalty. *Cf. Eagle River Mobile Home Park, Ltd. v. District Court,* 647 P.2d 660, 663 (Colo.1982). Nothing in the record before us indicates that the notice of intent was made in bad faith or with intent to delay the trial. In any event, any prejudice suffered by the defendants could have been remedied by granting a continuance of the trial date.

■ Furthermore, the scheduling order was set on the basis of all involved having failed to discuss the death penalty. The People should not be faulted for failing to give earlier notice when such notice was not required by statute and when neither the court nor the defendants inquired into whether the People intended to pursue the death penalty.[4] It is also relevant that at the time of these events the state of the law concerning the applicability of the death penalty was unsettled. This fact may have affected the prosecution in arriving at a decision to seek that sanction and in not informing the court and the defendants of its decision at an earlier stage of the proceedings. While we recognize that the trial court has broad discretion in conducting and scheduling trials, a desire to preserve the scheduling order is not a sufficient basis for denying the People the opportunity to seek the death penalty under the circumstances present here.

■ Relief in the nature of prohibition is a proper remedy in cases where the trial court has abused its discretion. C.A.R. 21(a); *People v. Gallagher,* 194 Colo. 121, 123, 570 P.2d 236, 237–38 (1977). We find that the district court erred in precluding the district attorney from qualifying the jury for a death penalty case. Accordingly, the rule to show cause is made absolute and the case is remanded for further proceedings.

---

4. The failure to provide notice upon specific inquiry and without proper justification would present a different issue than the one we decide here today.